UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ---------------------------------------------------x<br>IN RE EX PARTE APPLICATION OF Guy Gissin, solely in his capacity as court-appointed liquidator of Sybil Europe Public Co. Limited, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding<br>---------------------------------------------------x | Misc. No. 1:15-mc-00357 |

## REPLY DECLARATION OF GUY GISSIN

I, Guy Gissin, declare and state under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1. I am the court-appointed Liquidator[1] of Sybil Europe, which is currently under liquidation in a proceeding the Sybil Europe Liquidation Proceeding in the District Court, Tel Aviv, Israel, Case No. C.L.C. 13800-10-10.  I submit this reply declaration to supplement my initial declaration sworn to October 20, 2015 ("**Initial Declaration**") and address matters of fact and Israel law asserted in the opposition papers of the Moore Parties, in further support of my application for an Order pursuant to 28 U.S.C. § 1782 granting me leave to issue subpoenas upon witnesses Alan Friedman a/k/a Alan Freedman, LM Moore SP Investments, Moore Capital Management, LLC found within this District for the purpose of conducting discovery that will be used in a foreign liquidation proceeding now pending in Israel.  I have personal knowledge of the facts set forth herein based on my investigation to date of the affairs of Sybil Europe, except where otherwise stated, in which case it is on information and belief.

---

[1] Capitalized terms that are not defined herein have the same definition as set forth in my original Declaration.

2426972.7

### A. Expertise in Israel Corporate and Liquidation Law

2. As set forth in my Initial Declaration, I am an expert in Israel Corporate and Liquidation law. I have an LL.B. degree from Tel Aviv University 1991. I have been practicing law in Israel since 1991, with a specialty and extensive experience in commercial law, securities, corporate law, insolvency (liquidations and stays-of-proceedings), debt settlements, and commercial litigation. I have been appointed and acted as the receiver, liquidator, trustee, or special administrator for numerous companies, and have frequently been appointed by the courts, related parties, or debtors to represent companies and creditors such as bondholders and others in managing insolvencies of prominent, large-scale public corporation debt arrangements and restructuring, including real estate operation in Israel and abroad, In these capacities, I have extensive knowledge of Israeli law in these areas of practice, and I am fully familiar with Israeli law and procedure with respect to liquidations and bankruptcies.

### B. Background of My Work in the Sybil Europe Liquidation Proceeding

3. Pursuant to Sections 307 and 310 of the Companies Ordinance,[2] the Israel statute governing business entities and their liquidation, as court-appointed Liquidator, I have authority to manage all of Sybil Europe's assets under the supervision of the court. Pursuant to Section 288 of the Companies Ordinance, I am empowered to investigate the circumstances of the collapse of Sybil Europe to determine whether to file claims against any third parties who may be liable for playing a role in the collapse or breaching any duties owed to Sybil Europe.

4. To that end, I am investigating, and it is important to do so, among other things, whether (i) Sybil Europe assets were improperly diverted; (ii) there were excess payments to

---

[2] An English translation of the Companies Ordinance can be found this website:
athttp://www.financeisrael.mof.gov.il/FinanceIsrael/Docs/En/legislation/CorporateGovernance/5743-1983_Companies_Ordinance.pdf.

2

2426972.7

Sybil Consulting or others; (iii) there was an Unofficial Board and its members therefore owed duties to Sybil Europe and its creditors; (iv) certain investors and creditors, including the Moore Fund entered into transactions that improperly favored those creditors over others and should be recovered.

5. Based on my investigation to date, I have determined that the Moore Parties possess information and documents relevant to my determination and the determination of the Israel District Court about all of these matters, and thus the location and status of the Sybil Europe Assets and whether the Sybil Europe Assets include, among other things, legal claims against the Moore Parties *and* other parties who operated or engaged in transactions with Sybil Europe or its subsidiaries.

6. As previously set forth in my Initial Declaration, my investigation to date shows that Alan Friedman, as the representative of the Moore Parties, appears to have served as a member of a de facto "Unofficial Board" controlling Sybil Europe and participating in its management. Under Israeli law, such conduct imposed legal duties on the Moore Parties to Sybil Europe and its investors and creditors, the breach of which creates the right of the estate to recover in the Sybil Europe Liquidation Proceeding. In addition, my investigation to date shows that the Moore Parties may have used their position of influence over Sybil Europe and its subsidiaries to cause them to enter into transactions that impermissibly benefited the Moore Parties at the expense of other creditors of Sybil Europe and its subsidiaries, which also creates liabilities from the Moore Parties or other parties to Sybil Europe that are enforceable in the Sybil Europe Liquidation Proceeding.

7. In addition, I believe, based on my investigation to date, that the Moore Parties possess information and documents relevant to my investigation and determination as to whether

the Sybil Europe Assets include legal claims against other third parties. For example, in addition to my investigation of the conduct of the Moore Parties, I am also investigating the conduct of Tsarfati, who was, through another entity he controlled, the majority owner of Sybil Europe and a member of the "Unofficial Board." My investigation to date has shown that the Moore Parties and their representatives attended many meetings of this "Unofficial Board" and interacted extensively and closely with Tsarfati and therefore have important knowledge of Tsarfati's conduct and his interaction with Sybil Europe.

8. The Sybil Europe Liquidation Proceeding is ongoing. Work was done on various matters prior to the Supreme Court's September 2015 Decision affirming my authority as Liquidator. While some work was delayed pending that Decision, the liquidation can now proceed unencumbered by the uncertainty that may have existed before the Decision.[3]

### C. The Nature and Powers of an Israeli Liquidation Proceeding

9. I have read the decisions of the Second Circuit Court of Appeals and the District Court in *Lancaster Factoring Company Limited v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) (Italian); and *In re Application of Hill*, No. M19-117 (RJH), 2005 WL 1330769 (S.D.N.Y. June 3, 2005) (Hong Kong), respectively, and an Israeli liquidation proceeding appears to be similar to the foreign proceedings described therein.

10. An Israel liquidation proceeding is governed by the procedures and substantive provisions of the Companies Ordinance, which are derived from English law, and similar to provisions governing the bankruptcy of individuals in Israel. Before the establishment of Israel, the United Kingdom had a mandate to control the area now consisting of Israel, and most Israeli

---

[3] It may also be that the refusal of the Moore Parties to cooperate for years, as discussed below in ¶¶ 23-35 was inspired by their hope that by delaying they could avoid any response if the Supreme Court would dismiss the liquidation.

laws are based on English law including the Companies Ordinance that was formulated beginning in 1929. Of course, there have been some necessary changes since then, but the roots of the Companies Ordinance are from the British law.

11.     In addition, the Israel law appears to be similar to the foreign liquidation proceedings discussed in *Lancaster* and *Hill.*, by providing a "comprehensive procedure for the orderly and equitable distribution of asset to all creditors," once the court adjudicates "the value of the debtor's estate," *Lancaster* at 42, who are the *bona fide* creditors, and what is the proper value and priority of each creditor claim. *Hill* at *3. Similarly, it is "throughout a judicially-supervised procedure[4] in which the liquidator . . . exercises both administrative and adjudicative powers." *Id.*

12.     Liquidators have the power "to take into their custody all property and choses of action; to identify, pursue and realize assets of the company; to receive, evaluate and adjudicate creditor claims; and to distribute assets to creditors." *Id.*; *see also* Companies Ordinance §§ 306 (court may demand turnover of estate assets and the liquidator may "bring and defend by his official designation any suit or other proceeding pertaining to [estate] assets, or which it is necessary to bring or to defend for the collection of the assets and the effective winding up of the company"); 307(a) ("The liquidator is empowered . . . to bring and to defend in the company's name any action or other legal proceeding").

13.     Should there be any objections to the Liquidator's determinations regarding the validity, value, and priority of creditor and estate claims, those objections are adjudicated by the Israel District Court. In order to collect, liquidate, distribute assets and to resolve, fix, and pay

---

[4] An Israeli liquidator is supervised by the Israel District Court presiding over the liquidation proceeding, and he must report to and obtained authority from that Court for a variety of actions he seeks to take. Furthermore, he must also report to an Official Receiver, who is an official of a governmental authority that also oversees the work of all liquidators.

5

claims made by creditors, the Israel District Court presiding over the Sybil Europe Liquidation Proceeding must hear and *adjudicate in the liquidation proceeding itself* the facts presented by the Liquidator or other interested persons. Furthermore, there is no dichotomy between legal claims assets and personal or real property assets. The search for, and discovery of, personal and real property assets does not guaranty the recovery of the assets any more than does the determination of the existence of inchoate legal claim. In each case, the liquidator may have to use further legal proceedings to enable the estate to recover the asset in its name.

14.     Section 307(A)(2) of the Companies Ordinance provides that the liquidator shall "manage the company's affairs, to the extent necessary for the expedient winding up" of the company. Section 352 of the Companies Ordinance provides that an Israel liquidation proceeding involves the determination of bona fide claims by creditors, and determining the value and priority of each. Section 306 of the Companies Ordinance provides that the liquidator may "bring or defend . . . any suit or other proceeding pertaining to [estate] assets, or which it is necessary to bring or to defend for the collection of the assets and the effective winding up of the company." Section 306 also provides that the court may "make an order that all or part of a company's assets, even if held for it by trustees, shall be vested in the liquidator by his official designation." The Companies Ordinance also provides that an Israel liquidation proceeding includes proceedings involving preferences (Section 355(a)) and fraudulent conveyances (Section 268).

15.     Thus, as the court-appointed Liquidator in the Sybil Europe Liquidation Proceeding, I am charged with collecting and liquidating the assets of Sybil Europe and certain of its subsidiaries, including all legal claims that may be asserted on its behalf (the "**Sybil Europe Assets**"), and resolving and paying all claims of creditors pursuant to the rules of the

Israeli law.  Under Israeli law, potential claims against parties or property are assets of the estate being administered in the liquidation proceeding ("**Estate**").  Indeed, in upholding the order to commence the Sybil Europe Liquidation Proceeding and proceed with liquidation, the Supreme Court of Israel stated that "in our case, there is no dispute that potential claims rights are an asset" of the estate.  Decision, ¶ 94.

16. In my role as court-appointed Liquidator, in order to determine whether the estate possesses legal claims, personal property, or real property I am empowered to investigate and obtain facts.  Among other things, this includes investigating to make determinations about (i) the operation of Sybil Europe and its subsidiaries and affiliates; (ii) the conduct of its shareholders, employees, creditors, and vendors and other relating to Sybil Europe and its subsidiaries; (iii) who was an insider or acting as an insider in control of Sybil Europe and its subsidiaries; (iv) the validity of claims filed against Sybil Europe and its subsidiaries, (iv) the validity of claims that Sybil Europe and its subsidiaries may have against others, including *but not limited to* the Moore Parties; and (v) the existence, status, disposition, and recovery of the Sybil Europe Assets worldwide, including in the United States.

    **D.**    **A Motion for Orders Within the Sybil Europe Liquidation Proceeding**

17. Without any supporting affidavit, the Moore Parties also assert that any proceedings brought that the Liquidator seeks to bring against them would require a new proceeding outside of the Sybil Europe Liquidation Proceeding and thus this Court must determine if such a proceeding is "contemplated."  The Moore Parties are simply wrong about Israel law and procedure.  If the facts show that the Estate has claims against, or the right to recover property from, any party, Israel law permits the Liquidator to enforce these rights in the Sybil Europe Liquidation Proceeding.

18. Section 373 of the Israel Companies Ordinance provides:

**Fraudulent management**

373. (a) When the Court has handed down a liquidation order, it shall set a hearing on the question whether the company's business was run with the intention of defrauding its creditors or the creditors of another person or for any fraudulent purpose; if at that hearing or thereafter in the course of the company's liquidation it is found that the company's business was run as aforesaid, then the Court may declare, upon application by the Official Receiver or the liquidator or any creditor or contributory of the company and if it deems it right to do so, that any officer who knowingly was party to the management of the business shall bear unlimited personal responsibility for all or part of the company's liabilities, as the Court shall order; for purposes of this section – "**officer**", whether present or past, including anyone on whose directions and instructions the officers customarily acted.

(a1) To the hearing said in subsection (a) the Court shall summon the liquidator and it may summon the Official Receiver and any other person, as it finds appropriate; the Official Receiver shall submit to the Court – at a reasonable time before the hearing – his written opinion on the manner in which the company was managed, based on the facts known to him at that time.

(b) The Court may issue any further instructions it deems necessary to make the declaration effective, and it may especially direct that any liability imposed on an officer shall be a lien on any debt of the company to the officer or on any lien or right to a lien on the company's assets held by the officer or by another person or company that acts on his behalf, or by a person who makes a claim as their assignee, and the Court may give any further instructions necessary for the enforcement of the lien imposed under this subsection; for this purpose, "**assignee**" – any person to whose benefit the debt or the lien or the right to them was created on the officer's instructions, exclusive of an assignee in good faith for valuable consideration, not by way of marriage and without knowledge of the matters that were the cause of the Court's decision.

(c) An officer of a company who knowingly was party to the management of the company's business as said in subsection (a) shall be liable to one year's imprisonment.

(d) The Court that made a declaration concerning a person, or found

8

2426972.7

        him guilty as said in this section, may also order that that person cannot serve as officer or general manager of a company or be directly or indirectly involved in its foundation or in its management for a period stated in the order, which shall not exceed five years from the day of the declaration or the sentence, except by permission of the Court competent to wind it up; anyone who violates an order under this section shall be liable to two 52 years' imprisonment.

    (e)    The provisions of this section shall apply also when the said person bears criminal responsibility for the acts on which the declaration is based, and the declaration shall be deemed a conclusive judgment, as defined in the bankruptcy laws.

    (f)    The Official Receiver or the liquidator must appear at the hearing of an application for permission under subsection (d), and in such a hearing and at hearings of applications under subsection (a) they may give evidence and call witnesses.

    (g)    When the Court has reached a decision under this section, then the liquidator shall send a copy of the decision to the Registrar.

19. Section 374 provides:

If it appears in the course of a company's winding up that any person who participated in its promotion or foundation, or who was or is an officer of it or its receiver, liquidator or temporary liquidator, misused or retained any of the company's money or assets, or became liable or responsible for them, or committed any misfeasance or unlawful act in any negotiation concerning the company, the Court may investigate that person's behavior upon application by the Official Receiver, the liquidator, a creditor or contributory, and enforce upon him the return of the money or asset or part thereof, together with interest at a rate deemed appropriate by the Court, or to enforce upon him payment of money to the company's credit, as the Court may deem fit, to compensate for this act, and these provisions shall not be affected by the possibility that the offender may bear criminal responsibility for his acts.

20. Thus, if the Liquidator finds a violation of duties, he may bring a "Motion for Orders" in the pending *Sybil Europe Liquidation Proceeding* itself for an order establishing liability of the wrongdoing parties, including the remedy under Section 373 to hold a party liable

9

2426972.7

to compensate the Estate for unlawful acts or under Section 374 to make a party liable to the estate for all of the company's debts.

21.     A "Motion for Orders" is properly filed in the liquidation court itself and need not be filed in a separate civil proceeding.

22.     If and when the Moore Parties become the subject of a Motion for Orders and become parties in the Sybil Europe Liquidation Proceeding adverse to the Liquidator, they will at that time have the ability to respond and to move the Israel District Court for appropriate discovery from the Liquidator.  The Israel District Court will rule on their request, based on its determination of the relevance of the discovery sought under Israeli law.

        **E.**     **The Moore Parties' Refusal to Cooperate**

23.     The Companies Ordinance gives me extensive powers to obtain information to make these determinations.  Section 288 of Israeli Companies Ordinance Law gives me the compulsory power to demand and obtain documentary and testamentary evidence and to enforce that power over persons over whom the District Court has personal jurisdiction. http://www.financeisrael.mof.gov.il/FinanceIsrael/Docs/En/legislation/CorporateGovernance/5743-1983_Companies_Ordinance.pdf.   In fact, to obtain the order in the Sybil Europe Liquidating Proceeding approving retention of the law firm Golenbock Eiseman Assor Bell & Peskoe to obtain a Section 1782 Order in the United States, we informed the Court that "the Liquidator believes that LMM and especially Mr. Freedman has substantial information which could affect the liquidator's investigations on the circumstances of the collapse of the group and the company in particular, and the LMM and Mr. Freedman are parties wanted for questioning in this regard in accordance with the authority under section 288  of the Companies Ordinance."

24.     Prior to filing my Application to this Court, I engaged in extensive efforts in the Sybil Europe Liquidation Proceeding to obtain discovery from the Moore Parties.  As set forth below, at every step of the way, the Moore Parties resisted our efforts and refused to cooperate, and I had no way in Israel effectively to enforce these requests, because the Moore Parties are not residents or citizens of Israel at this time.  Indeed, as set forth in paragraph 34 below, the Moore Parties tried to dissuade me from seeking information against them in the United States, by asserting (as I later learned, falsely in my judgment) that as a foreign liquidator I had no right to seek information from them in the United States.

25.     On June 7, 2012, at the direction of the court, a court-appointed investigator, Ofer Alkalay, CPA, issued a summons for questioning to Friedman pursuant to section 288 of the Companies Ordinance.  In the letter accompanying the summons, Mr. Alkalay asked that Friedman appear for questioning before Mr. Alkalay and provided Friedman with proposed dates.  He also annexed the liquidation court's decision confirming the appointment of Mr. Alkalay as investigator in the process.  This letter received no reply and Friedman failed to appear for questioning.

26.     On November 5, 2012 Shimrit Melman, an associate in my law firm, sent letters to attorneys in Israel, which we believed to represent the Moore Parties, informing them of the summons and asking that they contact Mr. Alkalay to schedule Friedman's appearance for questioning.  These attorneys responded that they no longer represented the Moore Parties.

27.     On November 25, 2012, Ms. Melman sent an email directly to Friedman, reminding him of the summons, the legal authority on which it was based, and his failure to appear.  The email requested that Friedman contact Mr. Alkalay and reschedule the questioning to one of three proposed dates.  The email also advised Friedman of the Liquidator's right to take

2426972.7

legal action to compel his appearance if he failed to do so. A true and correct copy of a chain containing emails of November 25, 2012, December 12, 2012, April 3, 2013, and May 2, 2013 is attached hereto as Exhibit 8.[5]

28. On December 12, 2012, Nancy Chung, an attorney at Akin Gump Strauss Hauer & Felder LLP in New York (who now is at the firm representing the Moore Parties), sent an email to Ms. Melman advising that Friedman would not be available for questioning by Mr. Akalay and that Friedman "has never submitted to the jurisdiction of the Israeli courts." In her email, Ms. Chung indicated that Friedman would consider providing information to the Liquidator and asked for a list of questions and information sought. Exhibit 8.

29. On April 3, 2013, Ms. Melman sent an email to Ms. Chung, advising her that the Liquidator sought to question Friedman via video conference call, and asking that Ms. Chung confirm his availability. Exhibit 8.

30. On May 2, 2013, Ms. Chung sent an email to Ms. Melman, indicating that Friedman would consider providing information to the Liquidator and again asking for a list of questions and information sought. Exhibit 8.

31. On November 3, 2013, I sent a letter to Friedman, Ms. Chung, and Danal Abram, an attorney employed by Moore Capital Management, explaining the legal and factual bases for my discovery request and potential claims the Liquidator may have against the Moore Parties. A true and correct copy of the November 3, 2013, letter is attached hereto as Exhibit 9.

32. On November 19, 2013, Mr. Danal sent me an email stating that the Moore Parties had received my letter and claiming they were willing to engage in discussions. A true

---

[5] Pursuant to the Individual Rules of the Hon. Alvin K. Hellerstein, the Exhibits to this Supplemental Declaration have been numbered sequentially. My Initial Declaration contained Exhibits 1-7.

2426972.7

and correct copy of the November 19, 2013, email is attached hereto as Exhibit 10.  There was no substantive response, and the Moore Parties produced no information.

33.   On October 14, 2014, I again sent a letter to Ms. Chung requesting that Friedman appear for questioning at the offices of Golenbock Eiseman Assor Bell & Peskoe LLP in New York and deliver documents in his possession regarding Sybil Europe to the Liquidator.  The letter reiterated the Israel statutory basis for these requests and advised that the Liquidator would take legal action if Friedman failed to cooperate.  A true and correct copy of the October 14, 2014, letter is attached hereto as Exhibit 11.   The Moore Parties did nothing.

34.   On October 16, 2014, Christina Prusak Chainese, an attorney at Akin Gump Strauss Hauer & Felder LLP in New York, sent a letter to the Liquidator stating that Friedman would not cooperate with the Liquidator's request, and that "we are not aware of any authority on which you can come into the United States, which is a foreign jurisdiction, and compel Mr. Friedman to be deposed or otherwise questioned and/or to produce documents in connection with your represented role as the appointed liquidator of the Company pursuant to an order issued by the Tel-Aviv-Jaffa, Israel District Court."  A true and correct copy of the October 16, 2014, letter is attached hereto as Exhibit 12.

35.   On October 21, 2014, I sent a letter to Ms. Chung reiterating the factual basis for my discovery requests and providing an initial list of questions and information sought from Friedman.  A true and correct copy of the October 21, 2014, letter is attached hereto as Exhibit 13.

36.   Because Mr. Friedman failed to respond to this request, I (i) sought out and consulted with legal counsel in the United States to ascertain what rights I had in the United States; (ii) obtained authority from the Israel District Court to retain Golenbock Eiseman Assor

13

2426972.7

Bell & Peskoe LLP, and (iii) after the Israel Supreme Court issued its decision on September 4, 2015, upholding the Order appointing me as Sybil Europe Liquidator, commenced this proceeding to obtain Section 1782 authority to require the Moore Parties to provide documents and testimony.

### F. The Retainer with United States Counsel

37. My retainer agreement with Golenbock Eiseman Assor Bell & Peskoe LLP ("**GEABP**") provides that GEABP will be paid on a contingency fee basis if (i) I am successful in obtaining discovery from the Moore Parties in the United States pursuant to Section 1782, and (ii) thereafter, I obtain any recovery from the Moore Parties in the Sybil Europe Liquidation Proceedings, either through litigation in the Israel liquidation court or through settlement. I retained GEABP solely to pursue discovery in the United States pursuant to Section 1782, GEABP will not provide me with any legal services in the Sybil Europe Liquidation Proceeding itself. I will use any discovery obtained myself in my role as court-appointed Liquidator in the Sybil Europe Liquidation Proceeding. The fact that I retained GEABP on a contingency fee basis is irrelevant. These types of contingency fee arrangements are permitted in Israeli liquidation proceedings, and, indeed, my retainer agreement with GEABP was approved by the Israel District Court.

I declare, under penalty of perjury under the laws of the United States of America, about which my American counsel has advised me, that the foregoing is true and accurate to the best of my knowledge, and where stated, information, and belief.

Executed on December 30, 2015, in Tel – Aviv, Israel.

GUY GISSIN, Adv.
Liquidator of Sybil
Europe Public Co.
Limited